```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION
```

```
GLOBAL CONTAINER LINES, LTD.,       §
                                    §
     Plaintiff,                     §
                                    §
and                                 §
                                    §
GUANGZHOU OCEAN SHIPPING            §
COMPANY,                            §
                                    §
     Intervenor Plaintiff,          §
                                    §
v.                                  §    CIVIL ACTION NO. H-04-0456
                                    §
INTERNATIONAL BUILDING SYSTEMS      §
LLC, INTERNATIONAL MODULAR &        §
PANEL BUILDING SYSTEMS, INC.,       §
FLOUR CORPORATION, FLOUR DANIEL     §
INTERCONTINENTAL, INC. a/k/a        §
FLOUR INTERCONTINENTAL, INC.,       §
                                    §
     Defendants,                    §
                                    §
v.                                  §
                                    §
IRINI MARITIME CORPORATION,         §
M/V IRINI in rem, M/V LE TONG       §
in rem, and MORGAN PORTABLE         §
BUILDING CONTRACTORS, INC.,         §
                                    §
     Third-Party Defendants,        §
```

MEMORANDUM AND ORDER

Pending are Defendants International Building Systems LLC's and International Modular & Panel Building Systems, Inc.'s Motion to Dismiss All Remaining Claims (Document No. 88) and Third-Party Defendant Morgan Portable Building Contractors, Inc.'s Motion to Dismiss Remaining State Law Based Claims (Document No. 85) and

Motion for Summary Judgment (Document No. 64). After carefully considering the motions, responses, replies, and the applicable law, the Court concludes as follows:

I. Background

This action arises out of two shipments of temporary living quarters (the "mancamps") that sustained damage while in transit from Houston, Texas to the Middle East on two oceangoing vessels, the M/V LE TONG and the M/V IRINI. Defendants International Building Systems LLC and/or International Modular & Panel Building Systems, Inc. (collectively, "IBS") and IBS's subcontractors, including Third-Party Defendant Morgan Portable Building Contractors, Inc. ("Morgan"), constructed the mancamps, and IBS sold the mancamps to Defendant/Third-Party Plaintiff Flour Daniel Intercontinental, Inc., now known as Flour Intercontinental, Inc. (collectively, "Flour") for the construction of three United States Air Force bases in Qatar, Oman, and Bahrain (the "Mancamp Project").[1] Plaintiff Global Container Lines, Ltd. ("Global"), as carrier, procured shipment of the mancamps to the Middle East pursuant to a booking note and ocean bills of lading that Global issued to IBS.

---

[1] More specifically, Flour contracted with IBS to design, manufacture, transport, and erect the mancamps, and in turn, IBS contracted with Morgan to design and manufacture prefabricated billeting and shower/latrine units to be used in the mancamps. *See* Document Nos. 64 at 1-2; 91 at 3.

After the mancamps were damaged, Flour's cargo underwriters made claims for cargo damage against Global. In a separate action in Texas state court, IBS sued Flour for breach of contract and other claims relating to the mancamps.[2] Global then filed the instant action, seeking a declaratory judgment that all claims for damage to the mancamps were governed by the Carriage of Goods by Sea Act ("COGSA"), which applied to limit Global's liability for the cargo damage.[3] Guangzhou Ocean Shipping Company ("COSCO"), the owner of the M/V LE TONG, intervened in this action, asserting claims against Flour and IBS. Flour filed counterclaims for cargo damage against Global and COSCO, along with third-party claims against Irini Maritime Corporation ("Irini"), the owner of the M/V IRINI. IBS asserted similar counterclaims for cargo damage against Global, COSCO, and Irini. Additionally, Flour and IBS filed cross-claims against each other, and Flour filed third-party claims against Morgan, for the damage to the cargo.

Recently, Global, Irini, COSCO, and Flour settled all claims between them, and IBS reached an agreement with Global, Irini,

---

[2] The state action, International Building Systems, Inc. v. Flour Intercontinental, Inc., et al., Cause No. 2003-32566, is currently pending in the 333rd Judicial District Court of Harris County, Texas (the "State Litigation"). See Document No. 88 ex. A. Morgan is also a party to the State Litigation by virtue of Flour's third-party petition. Id.

[3] In its Original Complaint, as well as in its First and Second Amended Complaints, Global alleged that it was bringing its claims pursuant to the Court's admiralty and diversity jurisdiction. See Document Nos. 1 ¶ 6; 12 ¶ 6; 41 ¶ 6.

COSCO whereby all claims between those parties would also be dismissed. These agreements resulted in Global, Irini, COSCO, Flour, and IBS filing a Joint Motion to Dismiss Original Claims, Cross-Claims, and Counter-Claims (the "Joint Motion to Dismiss"), which the Court granted on February 27, 2006. *See* Document No. 86. Thus, the only claims remaining in this action are the state law claims between Flour and IBS and the state law claims asserted by Flour against Morgan (collectively, the "Remaining Claims"). Both IBS and Morgan have filed motions to dismiss the Remaining Claims, arguing that because the Court has dismissed the claims between Global, Irini, COSCO, Flour, and IBS--that is, the claims over which the Court had admiralty jurisdiction (collectively, the "Admiralty Claims")--the Court should decline to exercise supplemental jurisdiction over the Remaining Claims pursuant to 28 U.S.C. § 1367(c)(3). Alternatively, Morgan has moved for summary judgment on the third-party claims asserted against it by Flour.

## II.  Discussion

### A.  The Motions to Dismiss

Both IBS and Morgan move to dismiss the Remaining Claims under 28 U.S.C. § 1367(c)(3), which provides that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

According to IBS and Morgan, the Court dismissed all claims over which it had original jurisdiction when it granted the Joint Motion to Dismiss the Admiralty Claims, and the Remaining Claims are before this Court pursuant only to its supplemental jurisdiction. Because there is an action currently pending between Flour, IBS, and Morgan in Texas state court that could encompass the Remaining Claims, IBS and Morgan argue, the Court should decline to exercise supplemental jurisdiction over the Remaining Claims in the interest of judicial economy, convenience, fairness, and comity.

Flour responds that IBS's and Morgan's arguments fail because the Court has diversity jurisdiction over the Remaining Claims. Flour states that it is a California corporation with its principal place of business in California, that IBS is a Texas corporation with its principal place of business in Texas, that Morgan is a Nevada corporation with its principal place of business in Texas, and that the amount in controversy exceeds $75,000.  *See* Document No. 91 at 4-5; *see also* Document Nos. 7 at 2, 4, 6; 25 ¶¶ 1-3; 49 ¶ 6; 52 at 1, 3.  Because the Court has an independent basis of subject matter jurisdiction over each of the Remaining Claims, Flour argues, the Court cannot decline to exercise its jurisdiction under § 1367(c)(3).

In response, IBS and Morgan argue that because Global originally brought this suit pursuant to the Court's admiralty jurisdiction, and because jurisdiction must be determined at the

time the action is brought, Flour cannot now convert the basis of subject matter jurisdiction from admiralty to diversity. This argument misses the mark. Flour is not seeking to convert the basis of subject matter jurisdiction over Global's original complaint from admiralty to diversity, but even if it were, whether the underlying action was brought pursuant to the Court's admiralty jurisdiction or its diversity jurisdiction has no bearing on what jurisdictional bases exist for the Remaining Claims.[4] The question at present is whether the Remaining Claims invoke an independent basis of subject matter jurisdiction and therefore properly remain in federal court independently, or whether they fall only within the Court's supplemental jurisdiction in which event the Court has discretion to entertain or to dismiss them.

Although Flour's "First Amended Claims" does not specifically identify a jurisdictional basis for Flour's claims against IBS and Morgan, it does include allegations regarding the citizenship of these parties and the amount in controversy. *See* Document No. 52.

---

[4] *See, e.g.*, 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ["MOORE'S"] ¶ 14.53 (3d ed. 2000) ("Every claim asserted in federal court must have a basis of subject matter jurisdiction. Obviously, regardless of what that basis is for the underlying dispute between the plaintiff and the defendant, an impleader claim may invoke an independent basis of subject matter jurisdiction. For example, if the impleader claim arose under federal law, it could invoke federal question jurisdiction. If it were based upon state law but between citizens of different states and involving more than $75,000, it could invoke diversity of citizenship jurisdiction. . . . In any such case, the impleader claim would proceed in federal court because it would invoke an independent basis of subject matter jurisdiction.").

6

These allegations are sufficient to invoke the Court's diversity jurisdiction. *See*, *e.g.*, Ill. Cent. Gulf R.R. Co. v. Pargas, Inc., 706 F.2d 633, 636 & n.2 (5th Cir. 1983) (explaining that the provision conferring jurisdiction need not be specifically pleaded so long as the basis for subject matter jurisdiction is evident from the face of the pleadings).[5] Because 28 U.S.C. § 1332 provides an independent basis of subject matter jurisdiction over the Remaining Claims, the Court cannot dismiss the claims under 28 U.S.C. § 1367. *See* Schuler v. Phillips Petroleum Co., 169 F.3d 1171, 1172 (8th Cir. 1999) ("[W]e find that the district court erred with respect to declining jurisdiction over the [state law] disability discrimination claim. It appears that the court was proceeding on the mistaken assumption that it only had pendent jurisdiction over Schuler's state disability claim stemming from

---

[5] To the extent IBS and Morgan argue that it is not clear that the parties are actually diverse because "[r]ecent media reports indicate that Flour has been undertaking the construction of new corporate offices in Texas for the last eight months and plans to have half of its headquarters employees relocated to those offices in the next few weeks," this argument lacks merit. As IBS and Morgan themselves point out, "[j]urisdiction is determined by the facts existing at the time the action is brought." Document Nos. 92 at 2; 93 at 2. When Global filed its Original Complaint in February 2004, and when Flour filed its Original Answer and Claims in March 2004 and its First Amended Claims in January 2005, it was undisputed that Flour was a California corporation with its principal place of business in California. Any changes in Flour's citizenship since then do not affect the diversity analysis. *See*, *e.g.*, Coury v. Prot, 85 F.3d 244, 249 (5th Cir. 1996) ("If diversity is established at the commencement . . . of the suit, it will not be destroyed by subsequent changes in the citizenship of the extant parties.").

its federal question jurisdiction over the ADEA claim, and that with the grant of summary judgment on the latter, it had the discretion to entertain or dismiss the state claim.  The court seems to have overlooked the fact that since the parties were diverse, it possessed an independent basis of jurisdiction over Schuler's state claims pursuant to 28 U.S.C. § 1332.  Therefore, we reverse the district court's decision with regard to the [state] disability discrimination claim.").

B.    Morgan's Motion for Summary Judgment

In paragraph seven of its First Amended Claims, Flour states its claims against Morgan as follows:

> Alternatively, the loss and damages [to the mancamps] proximately resulted from the acts and/or omissions of Morgan and/or its agent(s), employee(s), and/or contractor(s) in failing and/or refusing to: (a) design, construct, package and/or otherwise prepare the cargos for ocean transport; (b) inform, instruct, monitor and/or supervise IBS, COSCO, [Irini] and/or Global concerning the cargo's weight, center of gravity, dimensions and/or other specifications; and/or (c) inform, instruct, monitor and/or supervise IBS, COSCO, [Irini] and/or Global concerning the proper manner of loading, stowing and securing the cargo aboard the M/V LE TONG and/or M/V IRINI.

Document No. 52 at 6-7.  Flour also invokes the doctrine of res ipsa loquitur "because the character of the loss was such that it would not have happened in the absence of negligence, and the instrumentality causing the occurrence exclusively was within COSCO's, [Irini]'s, Global's, IBS's and Morgan's control."  Id.

at 7. Morgan moves for summary judgment on these claims on the grounds that (1) Flour asserts only tort-based claims against Morgan, which are barred by the economic loss doctrine; (2) there is no relationship between Flour and Morgan that would provide a basis for Flour to assert any contract-based claims against Morgan; and (3) the doctrine of res ipsa loquitur is not applicable.[6]

1. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. See id. at 2553-54. A party opposing a properly supported motion

---

[6] In response to the motion for summary judgment, Flour states that it "has not asserted that a contract exists between it and Morgan or that it was in contractual privity with Morgan," and that it "withdraws invocation of the doctrine of res ipsa loquitur to its common law negligence claim against Morgan in this case." Document No. 76 at 2. Thus, the only disputed issue for the Court is whether the economic loss doctrine applies to bar Flour's claims against Morgan.

for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *See* Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2514-15 (1986)). "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *See* Anderson, 106 S. Ct. at 2513-14. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. (citing Anderson, 106 S. Ct. at 2511). Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

2.   Analysis

Morgan argues that Flour's tort claims--by which, Flour states, it "seeks to recover economic loss arising from the alleged defective packaging of [the] prefabricated billeting and shower/latrine units (the 'units') that Morgan manufactured and which later sustained physical damages during ocean carriage aboard the M/V LE TONG and M/V IRINI," Document No. 76 at 1--are barred by the economic loss doctrine.[7]  "It is well-settled Texas law that a plaintiff cannot maintain a tort action against a defendant when his damages are only for economic losses caused by the failure to perform a contract." Coffey v. Fort Wayne Pools, Inc., 24 F. Supp. 2d 671, 687 (N.D. Tex. 1998) (citing Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991); Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986)); *see also* Eastman Chem. Co. v. Niro, Inc., 80 F. Supp. 2d 712, 717 (S.D. Tex. 2000) ("The [economic loss] doctrine will preclude a tort cause of action if 1) the claim is for a breach of duty created *solely* by contract rather than a duty imposed by law, and 2) the injury is only the economic loss to the subject of the contract itself."); Trans-Gulf Corp. v. Performance Aircraft Servs., Inc., 82 S.W.3d 691, 695 (Tex. App.--Eastland 2002, no pet.) ("Simply stated, a duty in tort does not lie under the economic loss rule when the only injury claimed is

---

[7] Although Morgan initially questioned whether general maritime law or Texas law governed Flour's claims, the parties now agree that Texas law governs.

11

one for economic damages."). Because Flour has not identified any legal duty that Morgan owed to it, and because Flour seeks to recover damages solely for the economic loss to the subject matter of Flour's contract with IBS (<u>i.e</u>., the mancamps), Morgan argues that the economic loss doctrine precludes Flour's negligence claims.[8]

Flour responds that the economic loss rule does not restrict its claims against Morgan because (1) "a manufacturer like Morgan may be held liable under common law negligence or breach of express or implied warranties for the direct or consequential economic loss that its product causes an end user with whom the manufacturer is not in privity," and (2) "Flour has alleged claims arising from Morgan's common law negligence *and* breach of warranties." Document No. 76 at 3-5.  Flour's arguments are unavailing.  Contrary to Flour's assertion, Texas courts have applied the economic loss rule to negligence claims between parties who were not in privity. *See*, *e.g.*, <u>Trans-Gulf Corp.</u>, 82 S.W.3d at 694-95; <u>Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.</u>, 29 S.W.3d 282, 285-90 (Tex.

---

[8] To the extent Morgan may have owed to IBS a *contractual* duty to package the units in a particular manner, Flour has admitted that it "has not alleged in this action entitlement to recover from Morgan as a third party beneficiary of the contract between Morgan and [IBS]." Document No. 76 at 2.  Moreover, breach of any such contractual duty would be actionable in contract, not tort. *See*, *e.g.*, <u>Bass v. City of Dallas</u>, 34 S.W.3d 1, 8 (Tex. App.--Amarillo 2000, no pet.) ("[I]f a contractual duty is negligently performed, causing only economic loss, only a breach of contract action may be maintained, and an action in tort for negligence is precluded.").

App.--Houston [14th Dist.] 2000, no pet.); Bass, 34 S.W.3d at 8-9; Hou-Tex, Inc. v. Landmark Graphics, 26 S.W.3d 103, 106-07 (Tex. App.--Houston [14th Dist.] 2000, no pet.); Harris Packaging Corp. v. Baker Concrete Constr. Co., 982 S.W.2d 62, 67-68 (Tex. App.-- Houston [1st Dist.] 1998, pet. denied); Indelco, Inc. v. Hanson Indus. N. Am.--Grove Worldwide, 967 S.W.2d 931, 932-33 (Tex. App.-- Houston [14th Dist.] 1998, pet denied); Dennis Jewelry Co. v. Sonitrol Mgmt. Corp., 2003 WL 179618, at *3 (Tex. App.--San Antonio 2003, no pet.); *see also* Hininger v. Case Corp., 23 F.3d 124, 126- 27 (5th Cir. 1994); Coffey, 24 F. Supp. 2d at 687.[9]  Application of the economic loss rule is particularly appropriate here, where permitting Flour to sue Morgan for economic loss would disrupt the risk allocations that Flour worked out in its contract with IBS and that IBS, in turn, worked out in its contract with Morgan.  *See* Hou-Tex, 26 S.W.3d at 106-07 (citing Hininger, 23 F.3d at 125).

To the extent Flour argues that the economic loss rule does not apply to breach of warranty claims, such an argument has no bearing on Morgan's summary judgment motion, given that Flour does not assert a breach of warranty claim against Morgan anywhere in

---

[9] Flour cites Nobility Homes of Tex., Inc. v. Shivers, 557 S.W.2d 77 (Tex. 1977) for the proposition that a purchaser can assert a negligence claim for economic loss against persons with whom the purchaser is not in privity.  At least two Texas courts of appeals have specifically addressed and rejected this argument. *See* Coastal Conduit, 29 S.W.3d at 286-87; Indelco, 967 S.W.2d at 932-33; *see also* William Powers, Jr. & Margaret Niver, Negligence, Breach of Contract, and the "Economic Loss" Rule, 23 Tex. Tech L. Rev. 477, 486-87 (1992).

13

its First Amended Claims. *See* Document No. 52. Indeed, as Morgan correctly points out, Flour does not allege that Morgan made, let alone breached, any express warranty, nor does Flour allege facts from which it could be inferred that Morgan breached any applicable implied warranty. Flour's attempt to rewrite its pleadings through briefing does not satisfy its burden to defeat Morgan's motion for summary judgment.[10]

In sum, although Flour has pleaded against Morgan claims for negligence, Flour is actually seeking to recover for economic losses sustained by virtue of Morgan's allegedly negligent performance of its contract with IBS. Because the economic loss rule precludes such claims, Morgan is entitled to summary judgment.

### III. Order

Accordingly, it is

ORDERED that Defendants International Building Systems LLC's and International Modular & Panel Building Systems, Inc.'s Motion

---

[10] Morgan argues that even if Flour's allegations against it could be construed as a breach of warranty claim, such a claim would fail as a matter of law. *See* Document No. 78 at 4-6 (citing, *inter alia*, Hininger, 23 F.3d at 128-29 (recognizing that the Texas Supreme Court dispensed with privity as a prerequisite to suing the manufacturer of a finished product, even for economic loss on an implied warranty theory, but predicting that the Texas Supreme Court would nonetheless require privity in an action against the manufacturer of a mere product component)). Because the Court finds that Flour's First Amended Claims does not state a breach of warranty claim against Morgan, the merits of such a claim need not be reached.

to Dismiss All Remaining Claims (Document No. 88) and Third-Party Defendant Morgan Portable Building Contractors, Inc.'s Motion to Dismiss Remaining State Law Based Claims (Document No. 85) are DENIED.  It is further

ORDERED that Morgan Portable Building Contractors, Inc.'s Motion for Summary Judgment (Document No. 64) is GRANTED, and Flour Intercontinental, Inc.'s third-party claims against Morgan are DISMISSED.

Remaining to be tried are the cross claims between IBS and Flour.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 28th day of March, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE